No. 31,361

VERNA CORBETT, *Appellee*, v. THE KANSAS GAS & ELECTRIC COMPANY, *Appellant*.

(27 P. 2d 234.)

Opinion filed December 9, 1933.

*Allen B. Burch, J. B. Patterson,* both of Wichita, *H. L. McCune* and *Lynn Webb,* both of Kansas City, Mo., for the appellant.

*George W. Cox, Lawrence Weigand* and *L. E. Curfman,* all of Wichita, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for personal injuries sustained when plaintiff fell into a manhole maintained by defendant for access to a conduit forming part of its underground system

for distributing electricity. Plaintiff recovered, and defendant appeals.

In Wichita there is an alley or lane connecting two streets. On each side of the alley is a narrow sidewalk. In the walk on the south side of the alley were four manholes, into one of which plaintiff fell. Plaintiff and her husband kept a restaurant in the lane, and there were business places across the lane from the restaurant. Truck deliveries to Kress & Company's store were made at the place of accident. Automobiles crossed the sidewalk and the manhole into which plaintiff fell, to reach and leave a small parking space, and the alley or lane was a public thoroughfare used for both pedestrian and vehicular traffic. There was evidence persons besides plaintiff had been tripped by the manhole cover, and the next day after the accident to plaintiff it was replaced.

Notice to defendant of the defective condition of the manhole cover was an issue at the trial. The jury found actual notice, and the finding is not contested here. It is contended, however, that testimony given to prove notice was erroneously admitted.

R. G. Patterson was an employee of Kress & Company, in charge of maintenance of the company's store building. A man walking on the sidewalk stepped on the manhole cover with his heel, and tripped so that his foot started to go down. He stepped quickly, and avoided a fall, and said, "That is a dangerous manhole; somebody ought to report it." Patterson told him there was a telephone in the building, and he could use it. The telephone was beside the door, and the door was open. The man turned around, went back, and used the telephone. A few days later, and three or four days before plaintiff fell into the manhole, a small red truck was driven to the place of accident. The truck bore the name of the electric company on the cab. In it were two men in workmen's clothing, and some tools. The men commenced to inspect the manholes, and Patterson pointed out the one which was giving trouble. The men took off the cover, cleaned the ring or seat of the cover with a tool, and kicked the cover back into place. The men then inspected the other manholes, and drove away. After the men arrived, Patterson and one of the men conversed. When testifying at the trial Patterson would tell, and would be asked to tell, what the man said. The court struck out those portions of Patterson's narrative, instructed the jury to disregard them, sustained objections to questions, and

admonished counsel to find out what the men did. After what the men did had been described, plaintiff's counsel offered to prove by Patterson that one of the men said they had had a number of complaints with respect to the manhole being dangerous. Objection was made on the ground the man had no authority to make admissions on behalf of the company. The objection was overruled, and the court admitted the testimony for the purpose of showing the company had notice. The testimony was erroneously admitted.

The objection to the testimony referred to recognized there was room for inference the men were company employees, and was limited to nature of their authority. So far as the evidence disclosed, their authority extended no further than execution of the particular work in which they engaged. It did not include authority to commit the company by telling about things which had happened in the past in the course of the company's business. The error, however, could not have been prejudicial. How the employees happened to be at the scene of the accident was not important. They were there, and they inspected the manhole and did work upon it. The cover was bulged and warped; it rocked a little, making a tinkling noise; it had a slight tilt; it did not rest evenly on the seat; it did not fit snugly; there was quite a space between the rim and cover, and the cover would tilt when a person's foot was placed on the edge. The jury were asked the following question:

"When and in what manner do you find defendant electric company had notice of the condition of the sidewalk and manhole cover as it existed at the time of the accident?"

The jury ignored notice by report to the company of condition or accident, and gave the following answer:

"Evidence shows three (3) days prior to accident, by electric company employee inspecting and cleaning manhole ring seat."

Defendant complains the court permitted injury not pleaded to be proved.

Plaintiff went down into the manhole to a depth which would permit her elbows to strike the side of the hole at the top. Her body was in the manhole from her hips down. As she went down she was "kind of doubled over." The petition alleged that in falling she struck her body on the cover and on the edge of the hole, and bruised each and every part of her body, and especially suffered contusions and lacerations of both legs between her knees and her

feet. There was full proof of severe injuries to the legs, and the wounds became infected. Referring to body injuries, plaintiff testified that at first it seemed she was badly hurt all over, and she could not locate any particular place definitely. About the second day trouble with her back seemed to predominate. Her physician examined her back, and he testified he found a black and blue area over the right kidney, with tenderness and limitation of motion in the back and sacro-iliac region. On examination a considerable quantity of blood was found in the urine. Soon afterward pus was found in the urine. Satisfactory evidence was offered that the kidney was injured by the fall, that the blood came from the injured kidney, and that because the kidney was injured it became infected and discharged pus, which it still did at the time of trial.

Defendant objected to proof of injury to the kidney as not within the issues, and asked for an instruction withdrawing that subject from consideration by the jury. Defendant did not ask that the allegation in the petition of injury to the entire body be made more definite. Physicians for defendant examined plaintiff in November, and the trial occurred in the following January. The physicians knew plaintiff complained of her back, and that her kidney was discharging pus. In plaintiff's opening statement it was said the kidney was injured. At the trial defendant did not complain it was not prepared to meet what it called the enlargement of the issues, and it was prepared to do so. The matter of injury to the kidney was fully tried. Therefore, if it were necessary, which it is not, this court would now treat the petition as amended to include injury to the right kidney.

Defendant contends some medical testimony given by Doctor Misseldine was improperly received.

Doctor Cooper had been plaintiff's physician for a number of years, and treated her injuries. At the trial he was not available just at the time plaintiff desired to use him as a witness and Doctor Misseldine was called. Doctor Misseldine gave medical testimony based in part on the fact plaintiff was in good health previous to the accident, a fact not yet established and which plaintiff's attorney said would be proved. The proof was well supplied, and in the proof defendant found what it endeavored to use as a port in a storm. The accident occurred on April 29, 1932. The trial took place in January, 1933. When Doctor Cooper was called, he testi-

fied that in December, 1928, plaintiff passed a stone from her left kidney, and that kidney became infected and discharged pus. The condition cleared up within a few weeks. Careful observation was made to detect return of the trouble, and it did not return. An examination was made about two months before the accident, and there was no showing of pus. Of course, defendant contended the discharge of pus commencing after the accident did not come from the right kidney as the result of the manhole injury, but did come from the condition resulting from passing a stone from the left kidney some years before the manhole accident, a condition which quickly vanished and never returned. In that connection it is now contended Doctor Misseldine's testimony based on good health before the accident was erroneously admitted. If so, defendant should have given the district court an opportunity to do something about it at the trial.

Instructions relating to conditions under which defendant would be liable for negligence are criticized. When plaintiff commenced to go down in the manhole a truck driver, unloading merchandise at the Kress & Company store, was within two feet of her. Ten days before he had been tripped by the manhole cover. He could not prevent plaintiff from going down, but he helped her out of the hole and to the restaurant. He said he saw a good deal of blood gushing from her limbs, and in this appeal accident and injury are not contested. The jury found specially that defendant was negligent in having a defective manhole cover before and at the time of the accident and, as indicated, found defendant had notice of the condition. Therefore it is not now a matter of consequence what the instructions were.

The court instructed the jury that evidence of repair of the manhole might be taken into consideration by the jury as one of the incidents of the case in determining whether the manhole was defective. In this state such evidence may be considered in the manner indicated by the instruction. Defendant admits such is the rule in this state, but contends the court should abandon its position and place itself in harmony with the great majority of courts which have considered the subject. If so, the court should wait until it has before it a case in which evidence of repair might be of sufficient importance to affect the verdict.

Other contentions relating to instructions given and instructions refused are not of sufficient gravity to warrant discussion.

Defendant contends the verdict was excessive. The court has fully considered the evidence, which need not be rehearsed. The conclusion is that, while the amount is large, the verdict will not be disturbed.

The judgment of the district court is affirmed.

HUTCHISON, J., not sitting.